WALSH & ASSOCIATES, APC
16633 Ventura Boulevard, Suite 800
Encino, CA 91436
Telephone: (818) 986-1776
Facsimile: (818) 382-2071
DENNIS J. WALSH, Esq. (State Bar No. 106646)
dwalsh@walshlawyers.com
ALICE CHUNG, Esq. (State Bar No. 245166)
ahchung@walshlawyers.com

Attorneys for Defendants, VICTOR VALLEY
WASTEWATER RECLAMATION AUTHORITY
a public entity; LOGAN OLDS, a public entity
employee; RUSS BLEWETT, a public entity
employee

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELITA "ANGELA" VALLES, an individual;<br><br>        Plaintiff,<br><br>vs<br><br>VICTOR VALLEY WASTEWATER RECLAMATION AUTHORITY "VVWRA"; a Joint Powers Authority and Public Agency of the State of California; LOGAN OLDS, an individual; RUSS BLEWETT, an individual; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. 5:15-cv-02297-VAP-SP<br>Assigned to Hon. Virginia A. Phillips<br><br>**DECLARATION OF LOGAN OLDS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>DATE:        June 5, 2017<br>TIME:        2:00 p.m.<br>COURTROOM:  8A, 8th Floor |

///

1

I, Logan Olds, do hereby declare:

1.    I am over 18 and years of age and a resident of the State of California. I make this declaration in support of the Motion for Summary Judgment, or, in the alternative, Motion for Partial Summary Judgment, filed by defendants Victorville Valley Wastewater Reclamation Authority (hereinafter "VVWRA"), Logan Olds, and Russ Blewett (collectively "Defendants").

2.    I have personal knowledge of the facts stated herein, and would and could competently testify thereto if called upon to do so.

3.    I currently am the General Manager at VVWRA.  I have been the General Manager since April 2006. I am responsible for the overall management and operation of VVWRA.  During the ordinary course of business, I prepare performance evaluations of the employees under my direct supervision, memoranda regarding personnel actions relating to salary changes or job reclassifications, notices regarding tuition reimbursement requests, and other documentation regarding the day-to-day operations of VVWRA.  I report to the Board of Commissioners of the VVWRA ("Board").

4.    VVWRA prohibits harassment on the basis of sex, race, color, or any other protected class.  In the event an employee experiences harassment, the employee should report the conduct to the direct supervisor or general manager. In the event, the employee experiences harassment by the general manager, the Board shall appoint an investigator. Attached herein as **Exhibit 18** is a true and correct copy of VVWRA's Anti-Harassment Policy, Rule 8. VVWRA also prohibits discrimination on the basis of sex, race, color, or any other protected class. Attached herein as **Exhibit 19** is a true and correct copy of VVWRA's Anti-Discrimination Policy, Section 1.5. All anti-harassment and anti-discrimination policies are instituted by the Board. There are no policies depriving anyone of any rights, including based on an employee's sex, race, color, or engagement in any other protected activity.

2

5.     I have been plaintiff Angela Valles's direct supervisor since April 2006.  At no time have I ever harassed, discriminated against or retaliated against Ms. Valles because of her gender, any other protected category, for making reports of harassment or her belief that violations of public policy, regulations, or statutes occurred, or for any reason whatsoever.   At no time have I ever harassed, discriminated or retaliated against any other VVWRA employee because of gender or any other reason.  The only time I was concerned that people could be targeted due to a protected trait was when Ms. Valles measuring the skirts of at least one woman and critiqued or counseled female employees on their dress.  (See paragraph 7, below.)

6.     Ms. Valles has never complained to me that she believed that I have treated her inappropriately due to her gender or any other protected category.  Ms. Valles has never complained to me that she was under the impression that VVWRA has a policy or custom of discrimination, harassment or retaliation on account of an employee's gender or other protected category.  No VVWRA employee has ever complained to me that they believed that VVWRA has a policy or custom of discrimination, harassment or retaliation on account of an employee's gender or other protected category.

7.     Ms. Valles often wore low cut blouses, short skirts, and high heels to work.  I felt her attire was inappropriate, particularly for the work that we perform.  Ms. Valles wrote-up certain female employees for wearing short skirts, even going so far as measuring the length of their skirts, despite the fact that Ms. Valles also wore revealing attire.  I have never instructed Ms. Valles to measure the length of the skirt of any employee.  I also found it unfair for Ms. Valles to critique other people's attire, when I received complaints from other employees about Ms. Valles's inappropriate attire.  I recall a time where Ms. Valles wore lacy, revealing clothing and high heels to a Board meeting, which I felt was inappropriate.  Coupled with the complaints I had received about Ms. Valles's attire, I concluded that I

3

should address her inappropriate attire. However, I did not know how to broach the topic and believed the only way she might understand is if I said something provocative that would catch her attention. Knowing Ms. Valles's lack of inhibitions when she discussed private information, I told Ms. Valles that she looked like she wore "stripper shoes." I understand that Ms. Valles has testified that I commented that the shoes were "hooker shoes." I believe Ms. Valles is referring to the same instance, as I only commented on her shoes on one occasion. I recall that Ms. Valles laughed after hearing this comment and explained how much she liked her heels. She never complained to me about my comment about her shoes nor did she appear offended by the comment. I did not make this comment intending to degrade Ms. Valles because of her gender or to sexually harass Ms. Valles. I made the comment knowing it would catch her attention and that perhaps, she would realize her attire was inappropriate for work. I had no intention of offending or embarrassing her. I only wanted to convey to her that her attire was inappropriate and she should reevaluate her attire, in particular because she was an administrator and, based on what I observed, she seemed to hold a different standard for the attire of female employees separate from the standards that she set for herself.

8.   In 2015, I attended a weekend community parade and brought a date with me. The parade was a volunteer, unpaid event. I did not grope my date in front of others as Ms. Valles claims. Ms. Valles never complained to me that I engaged in any sort of inappropriate conduct with my date and never told me I made her feel uncomfortable. Other employees were present at the parade and none of them complained that I acted inappropriately.

9.   Although VVWRA traditionally has been a male-dominated work-force, Ms. Valles holds one of top four positions and has received pay raises throughout her employment with VVWRA where she has now topped out on her salary. Throughout Ms. Valles's employment, I approved multiple raises for Ms. Valles where she has now maxed out on her salary. I have never declined a pay

4

1  raise for Ms. Valles on account of her gender, any other protected category, or

2  because she has submitted complaints.

3    10. As part of my regular duties as General Manager, I have access to the

4  salaries of VVWRA employees. On July 21, 2006, I sent notice to Ms. Valles of a

5  CPI monthly salary increase from $8,329.33/month to **$8,720.81/month**, effective

6  7/1/06. The Board approved the increase on 7/18/06. Attached herein as **Exhibit 2** is

7  a true and correct copy of my notice to Ms. Valles (i.e. "VVWRA Advice of

8  Personnel Action"), dated July 21, 2006, informing her of a salary increase.

9    11. On October 6, 2006, I sent notice to Ms. Valles of a merit salary

10  increase from $8,720.81/month to **$9,626.14/month**, effective 7/1/06. Her salary

11  designation elevated from a 105C designation to a 105E designation, which was

12  done to reflect her completion of her master's degree. It is noted that Ms. Valles's

13  probationary employment ended on 4/1/06 where a step increase should have taken

14  place. Attached herein as **Exhibit 3** is a true and correct copy of my notice to Ms.

15  Valles (i.e. "VVWRA Advice of Personnel Action"), dated October 6, 2006,

16  informing her of a salary increase.

17    12. On August 31, 2007, I sent notice to Ms. Valles of a CPI monthly

18  salary increase from $9,626.14/month to **$9,991.93/month**, effective 7/1/07.

19  Attached herein as **Exhibit 4** is a true and correct copy of my notice to Ms. Valles

20  (i.e. "VVWRA Advice of Personnel Action"), dated August 31, 2007, informing her

21  of a salary increase.

22    13. On June 23, 2008, I sent notice to Ms. Valles of a CPI monthly salary

23  increase from $9,991.93/month to **$10,321.67/month**, effective 7/1/08. Attached

24  herein as **Exhibit 5** is a true and correct copy of my notice to Ms. Valles (i.e.

25  "VVWRA Advice of Personnel Action"), dated June 23, 2008, informing her of a

26  salary increase.

27    14. On July 3, 2013, I sent notice to Ms. Valles of a CPI hourly salary

28  increase from $59.55/hr to $60.80/hr, effective 7/1/13. Attached herein as **Exhibit 6**

**DECLARATION OF LOGAN OLDS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1  is a true and correct copy of my notice to Ms. Valles (i.e. "VVWRA Advice of
2  Personnel Action"), dated July 3, 2013, informing her of a salary increase.

3       15.   On July 8, 2014, I sent notice to Ms. Valles of a CPI hourly salary
4  increase from $60.80/hr to $61.41/hr, effective 7/1/14. Attached herein as **Exhibit 7**
5  is a true and correct copy of my notice to Ms. Valles (i.e. "VVWRA Advice of
6  Personnel Action"), dated July 8, 2014, informing her of a salary increase.

7       16.   Additionally, I was aware that Ms. Valles helped create a tuition
8  reimbursement policy at VVWRA where an employee could request reimbursement
9  for education expenses related to the employee's job. Based on the policy, if the
10 employee chose to attend a private university, the employee would only be entitled
11 to reimbursement based on rates of California State University, San Bernardino (i.e.
12 CSUSB rates).    Attached herein as **Exhibit 17** is a true and correct copy of
13 VVWRA's "Rule 9 Tuition Reimbursement Program."

14      17.   I approved all of Ms. Valles's requests for tuition reimbursement
15 relating to her Master's Program at Pepperdine University at Cal State rates per
16 VVWRA's tuition reimbursement policy. No employee has received anything other
17 than reimbursement at CSUSB rates. On August 16, 2006, I approved tuition
18 reimbursement costs of $1,437.50 for Ms. Valles's Pepperdine Master's Program.
19 Attached herein as **Exhibit 8** is a true and correct copy of Ms. Valles's Request for
20 Educational Benefits" form that I approved, dated, and signed on August 16, 2006.
21 On September 13, 2006, I approved tuition reimbursement costs of $1,302.50 for
22 Ms. Valles's Pepperdine Master's Program. Attached herein as **Exhibit 9** is a true
23 and correct copy of Ms. Valles's Request for Educational Benefits" form that I
24 approved, dated, and signed on September 13, 2006.

25      18.   Initially, when I began my employment at VVWRA, I noticed that
26 VVWRA needed discipline to improve its operations. Ms. Valles operated with a
27 heavy hand, but now VVWRA has improved its operations. A few years ago, I met
28 with Ms. Valles to persuade her to ease up on her heavy handed approach to

6

1   management.  However, I do not believe she has the temperament to change.   In

2   various performance evaluations of Ms. Valles, I noted that Ms. Valles's

3   communication and management style was a concern.

4        19.   For instance, I prepared and presented Ms. Valles with a performance

5   evaluation on December 2, 2010 for the period June 15, 2007 through December 2,

6   2010. Attached herein as **Exhibit 10** is a true and correct copy of my performance

7   evaluation of Ms. Valles, dated and signed on December 2, 2010.  Although Ms.

8   Valles received an above standard rating, I noted under the "Collaboration" section

9   that Ms. Valles's "communication style can be seen as direct and due to your

10   position in the organization can make employees anxious around you. An example

11   occurred at our latest staff meeting during the roundtable portion when you abruptly

12   stated that VVWRA now had a hiring freeze.  It was a shocking opening statement

13   and could have been softened and the reasoning explained to the employees."

14   Under the "Courtesy" section, I commented: "My concern is that you can be very

15   direct with staff. Although you are courteous to a fault at times I would also like you

16   to consider how your comments might be perceived by staff. It is not always

17   necessary to be brutally honest sometimes we can soften things."

18        20.   On January 4, 2013, I prepared and presented Ms. Valles with a

19   performance evaluation for the 2012 calendar year. Attached herein as **Exhibit 11** is

20   a true and correct copy of my performance evaluation of Ms. Valles, dated and

21   signed on January 4, 2013. Under the "Collaboration" section, I commented that Ms.

22   Valles's "communication style can be seen as direct and due to your position in the

23   organization can make employees anxious around you. To address this issue I would

24   like you to interact more directly with staff outside your department.  This would

25   also be a good way to learn how projects are developed and implemented at

26   VVWRA." Under the "Decision Making" section, Ms. Valles received a below

27   standard rating.   Olds commented "One of your greatest strengths is your

28   persistence.  This strength can also be a weakness if your persistence clouds your

7

judgment between work and personal goals.   Recently this situation arose and created considerable risk to yourself and VVWRA.   To obtain a satisfactory rating you will need to clearly demonstrate that you understand your distinction between professional and personal goals." Under the "Courtesy" section, Olds commented "My concern is that you can be very direct with staff. Although you are courteous to a fault at times I would also like you to consider how your comments might be perceived by staff. It is much better to pause and gather your thoughts than to create a situation which requires damage control."   Under the "Efficiency" section, Ms. Valles received a standard rating.   Olds commented "I am always concerned that your political role may impact your department.   You have many responsibilities here at VVWRA which may require your attention." Under the "Responsibility" section, Ms. Valles received a below standard rating.   Olds commented "In 2012 a situation arose which led you to pursue a goal which resulted in your disregarding the rules you helped to create.   This was a violation of your responsibility to VVWRA.   To obtain a satisfactory rating you will need to demonstrate to me that your personal goals do not conflict with your professional activities." I addressed Ms. Valles's political activity in her performance evaluation because I had to suspend her for conducting political activities while at work.

21.   In early 2015, I learned that former VVWRA employees had filed complaints against me, Ms. Valles, and the Director of Operations, Gilbert Perez, for creating a hostile work environment.   VVWRA hired a law firm to investigate the complaints.   The private investigator recommended to VVWRA's general counsel that Ms. Valles be placed on paid administrative leave while the investigation took place because the complaints by former employees were directed mainly against her. After the investigator's recommendation, Ms. Valles was placed on paid, administrative leave from approximately March 2015 through July 2015.

22.   On July 16, 2015, I wrote a letter to Ms. Valles informing her that the investigation found the complaints of illegal conduct were unsubstantiated. I

8

1   informed Ms. Valles that her leave would end on July 20, 2015 and she could return
2   to work on July 21, 2015. Attached herein as **Exhibit 13** is a true and correct copy
3   of my letter to Ms. Valles, dated and signed July 16, 2015.

4       23.    On July 23, 2015, I wrote a letter to Ms. Valles informing her that
5   although the investigator concluded that no illegal conduct occurred, the investigator
6   also concluded that Ms. Valles's "management style was overbearing and
7   oppressive and a direct contributing factor to overall low employee morale." I also
8   informed her that she was being returned to work as the Director of Finance where
9   she would have direct supervision over the Accounting Supervisor and secondary
10  supervision over the Accountant and Purchasing Technician positions. Ms. Valles
11  would continue to receive the same rate of pay and benefits. Attached herein as
12  **Exhibit 14** is a true and correct copy of my letter to Ms. Valles, dated and signed
13  July 23, 2015.

14      24.    Ms. Valles's transfer from the Director of Administration, where she
15  oversaw Human Resources, to the Director of Finance position was based on the
16  findings of the investigation report, which had nothing to do with Ms. Valles's
17  gender, any other protected category, or for making complaints.  Based on the
18  findings of the investigation, employee morale would not improve if Ms. Valles
19  remained the supervisor of Human Resources.  Thus, in order to improve employee
20  morale, Ms. Valles was transferred to the Director of Finance position where she no
21  longer oversees Human Resources. Plaintiff's transfer to the Director of Finance
22  position is not a demotion. She was Director before her transfer and is still a
23  Director at VVWRA.

24      25.    Ms. Valles earns a higher salary than the current Director of
25  Administration (Robert Coromina).  Ever since Ms. Valles has returned from
26  administrative leave, she has tried to undermine the current Director of
27  Administration, Mr. Coromina.  She claims that he is incompetent.  However, Mr.
28  Coromina, who is Hispanic, has a significant amount of experience for the position

9

1  and he also oversees various departments. Under Ms. Valles, Mr. Coromina was the
2  former Network Supervisor under Ms. Valles and had vast experience managing
3  VVWRA's network and technical support, and ensuring Environmental
4  Compliance. He continues to oversee the areas of information technology,
5  environmental health and safety, public information, as well as human resources. I
6  have observed that has Mr. Coromina developed good relationships with employees
7  and had the even-keeled temperament to oversee human resources. When Mr.
8  Coromina became the interim Director of Administration, he took initiative to learn
9  new tasks by enrolling in classes relevant to his new position. Nobody, other than
10 Ms. Valles has complained about Mr. Coromina's management style, and she only
11 made such complaints after her return from paid administrative leave. In fact, I have
12 received positive reviews from the employee association about Mr. Coromina. I
13 believed that he would be a good fit for the position of Director and thus far, he has
14 met or exceeded my expectations.

15      26.    In further attempts to undermine Mr. Coromina, Ms. Valles also claims
16 that Mr. Coromina intoxicated a female employee, possibly engaging in criminal
17 activity, while at a conference in Nevada. The allegation was concerning and I
18 informally investigated the matter. I spoke with some of the employees present,
19 including Mr. Coromina. These employees confirmed that Ms. Valles's claims were
20 baseless, and there was no need to take any action with respect to the allegation, as I
21 found that there had not been any wrongdoing by Mr. Coromina. I confirmed that
22 the female employee was intoxicated, but that other employees took her to her hotel
23 room, not Mr. Coromina as Ms. Valles claimed. I learned that Ms. Valles was not
24 present at this conference. I never received a complaint from the female employee.

25      27.    Ms. Valles has shirked her job responsibilities as the Director of
26 Finance  and has accused me of trying to set her up for failure-. Shortly after she
27 was transferred to the Director of Finance position, she emailed me stating that I
28 was setting her up to fail and ultimately terminate her because she did not have a

10

background in finance.  She requested that I return her to her prior role as Director of Administration. Her email was in response to a finance meeting we had where I was concerned with the lack of direction in finance. I responded to her email stating that she can attend training to improve team efficiency and that a return to her prior role was not an option.  Attached herein as **Exhibit 15** is a true and correct copy of the email string of communications I had with Ms. Valles, dated November 5, 2015. Despite her accusations in her email, I have not attempted to terminate her or undermine her in any way. As I expressed in my email correspondence to Ms. Valles, I have encouraged her to continue her training in finance and have always encouraged her (and other Directors) to take classes to improve their management skills.

28.   On every day that I am in the office, Ms. Valles generally closes the door to her office and I rarely observe her interacting with co-workers.  As an administrator of many years, I expect and have given her the latitude to run the department and ensure that its tasks are completed through her discretion.  Ms. Valles has a direct report in her department and it is under her purview to assign duties to her subordinate as she sees fit.  My expectation is that the duties of the Finance Department are completed. Although Ms. Valles is the Director of Finance and is responsible for managing the finance department, I often communicate with the Accounting Supervisor, Ms. Valles's direct report, when seeking financial information. As Ms. Valles rarely communicates with me and generally stays in her office with her door closed, I am not sure what she is doing on a daily basis.

29.   Additionally, Ms. Valles continues to complain about other employees. Ms. Valles complained about a co-worker who parks next to her alleging that VVWRA was attempting to intimidate her because the employee had a sun visor on her car with the phrase "vengeance." Based on Ms. Valles's report to me, I spoke to the employee, who informed me that the phrase related to the name of her son's softball team and had nothing to do with Ms. Valles.  Relying on the employee's

11

1    report to me, I concluded that Ms. Valles's complaint was unfounded; the employee

2    was not attempting to threaten or indirectly harass or bother Ms. Valles.

3        I declare under penalty of perjury under the laws of the United States of

4    America that the foregoing is true and correct.

5        Executed this       day of May, 2017, in _____, California.

6

7                                                 _____

8                                                 Logan Olds

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF LOGAN OLDS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

1  report to me, I concluded that Ms. Valles's complaint was unfounded; the employee

2  was not attempting to threaten or indirectly harass or bother Ms. Valles.

3      I declare under penalty of perjury under the laws of the United States of

4  America that the foregoing is true and correct.

5      Executed this 8th day of May, 2017, in Victorville, California.

6

7

8                         Logan Olds

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12